**Lawrence G. QUINN, Plaintiff,**

v.

**Marvin CUNNINGHAM, et al., Defendants.**

**Civ. A. No. 94–3339.**

United States District Court, E.D. Pennsylvania.

March 8, 1995.

---

1. This disposes of plaintiff's argument that the Trustees should have considered that plaintiff

became disabled as a result of covered employment. The Plan made no such provision.

26

Lawrence G. Quinn, pro se.

Randall J. Henzes, Office of Atty. Gen., Philadelphia, PA, for Marvin Cunningham, Leo Eckenrod, Ernie Carretti, Gary Rhoads and Paul Eckert.

John O.J. Shellenberger, III, Randall J. Henzes, Office of Atty. Gen., Philadelphia, PA, for Donald T. Vaughn.

*ORDER & MEMORANDUM*

KATZ, District Judge.

AND NOW, this 8th day of March, 1995, upon consideration of the defendants' Motion for Summary Judgment, it is hereby **ORDERED** that the said motion is **GRANTED** in part and **DENIED** in part.

*Facts*

Plaintiff Lawrence G. Quinn is an inmate at the State Correctional Institution at Graterford. The defendants are four officials responsible for the management of the prison shoe plant.

The plaintiff, who is white, alleges that the defendants discriminated against him on the basis of race with respect to his work assignment. In March 1994, the plaintiff was the side cage clerk at the shoe plant. When the position of production and scheduling clerk became available, the plaintiff expressed his interest in the job. Defendant Gary Rhoads, the shoe plant foreman, allegedly told the plaintiff that he "could not have the job as Production Clerk because [he was] not black, and there were complaints that the shop workers wanted a black man to have the job." A black inmate was assigned to the position.

The plaintiff also alleges that the defendants retaliated against him for filing a grievance about racial discrimination in the shoe plant. Prior to March 1994, inmates assigned to the shoe plant received "extra hours" for "extra work." For example, an inmate who worked eight hours might be paid for nine if he took on duties that his position did not require. The plaintiff claims that the defendants abruptly halted the practice of paying him "extra hours" for "extra work" after he filed his grievance.

The defendants now move for summary judgment. They argue: (1) that the plaintiff cannot establish a due process claim or an equal protection claim on the facts of this case; (2) that there were legitimate, nondiscriminatory reasons why the plaintiff did not get paid "extra hours" for "extra work" after filing his grievance; and (3) that the defendants are entitled to qualified immunity.

*Discussion*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

When ruling on a summary judgment motion, the court must construe the evidence and any reasonable inferences drawn therefrom in favor of the non-moving party. *Tiggs Corp. v. Dow Corning Corp.,* 822 F.2d 358, 361 (3d Cir.1987); *Baker v. Lukens Steel Corp.,* 793 F.2d 509, 511 (3d Cir.1986). In other words, if the evidence presented by the parties conflicts, the court must accept as true the allegations of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

The defendants are entitled to summary judgment insofar as the plaintiff claims a violation of his constitutional right of due process. Neither the federal Constitution nor Pennsylvania law gives the plaintiff a liberty or property interest in any prison work assignment. *See James v. Quinlan,* 866 F.2d 627, 629–30 (3d Cir.), *cert. denied,* 493 U.S. 870, 110 S.Ct. 197, 107 L.Ed.2d 151 (1989) (inmates have neither liberty nor property interest in federal prison industries job assignments); Defs.' Ex. 6, Pa. Dep't of Corrections Admin. Directive 816 ("No inmate has a right to assignment to or continuation in any job assignment.").

However, the defendants are not entitled to summary judgment insofar as the plaintiff alleges an equal protection violation. Although the plaintiff has no right to any particular prison job, prison officials cannot discriminate against him on the basis of his race in work assignments. *See, e.g., Williams v. Meese,* 926 F.2d 994, 998 (10th Cir.1991); *Black v. Lane,* 824 F.2d 561, 562 (7th Cir.1987); *Bentley v. Beck,* 625 F.2d 70, 70–71 (5th Cir.1980). There are genuine issues of material fact as to whether the defendants decided not to assign the production and scheduling clerk job to the plaintiff because of his race, and if so, whether the defendants' actions were justified by their compelling state interest in prison security.

Likewise, the defendants are not entitled to summary judgment insofar as the plaintiff claims that he was punished for exercising his First Amendment right to file an administrative grievance. There is a genuine issue of material fact as to whether prison

**28**

officials abandoned the practice of giving inmates "extra hours" for "extra work" across the board, or whether they singled out the plaintiff in retaliation for filing his grievance.

Finally, the defendants are not entitled to qualified immunity. Reasonable officials in their positions could not have believed that racial discrimination in prison work assignments and retaliation against inmates for filing grievances were lawful in light of clearly established law and the information that they possessed at the time. *See Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991); *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).